IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Stevens Aviation, Inc., | ) Civil Action No.: 6:12-3390-BHH |
|                 Plaintiff, | ) |
| v. | ) |
| Blackhawk Modifications, Inc., | ) **OPINION AND ORDER** |
|                 Defendant. | ) |
| _____ | ) |

      This matter is before the Court on the defendant Blackhawk Modifications Inc.'s ("the defendant") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (ECF No. 44, 45), the plaintiff Stevens Aviation, Inc.'s ("the plaintiff") cross motion for summary judgment (ECF No. 46), and the plaintiff's motion to strike reply (ECF No. 83). Responses and replies, and supplements to each summary judgment motion, have been filed, and these motions are ripe for consideration.

## BACKGROUND

      This declaratory judgment action arises out of an airplane crash that occurred in Long Beach, California on March 16, 2011. Both Stevens and Blackhawk are defendants in several wrongful death lawsuits currently pending in California. (ECF Nos. 44-3 through 44-8.) The aircraft involved in the accident was a Beech Super King Air 200, a twin engine, eight seat aircraft, manufactured in 1981 by Beech Aircraft Company. At the time of manufacture, the airplane was equipped with a Pratt & Whitney model PT6A-41 engine. (ECF No. 46-2.)

      In May 1997, the Federal Aviation Administration ("FAA") issued a Supplemental

1

Type Certificate No. 00433AT (the "STC")[1] to the plaintiff, approving its application for an engine upgrade installation of Pratt & Whitney model PT6A-42 engines onto Beech King Air 200s. (Shieman Aff. ¶ 5.) In 1999, the airplane, in question, was actually modified with the engine upgrade, in accordance with the STC. It is undisputed that the defendant had no involvement with the STC application or FAA approval. (Pl. Resp. Req. to Admit No. 15.)

Champion Air, LLC, the owner of the subject aircraft in 1999, purchased a license from the plaintiff to utilize the STC. On August 6, 1999, a Champion Air mechanic installed the STC engine modification on the subject aircraft. (Pl. Resp. 2nd Interrog. No. 1.) At the time of the 1999 engine modification on the subject aircraft, the plaintiff was the owner of the STC. (Pl. Resp. Req. to Admit No. 13.) It is undisputed that the defendant had no involvement in the 1999 modification. (Shieman Aff. ¶ 7.)

In early 2006, the plaintiff approached the defendant about purchasing the STC No. 00433AT. (Shieman Aff. ¶ 8.) Beginning in March 2006, the parties participated in contract negotiations. (Shieman Aff. ¶ 9.) On April 26, 2006, the defendant purchased the

---

[1] The parties have represented that a Supplemental Type Certificate (STC) is a certificate issued when an applicant has received FAA approval to modify an aircraft from its original design. The STC approves not only the modification but also how that modification affects the original design of the aircraft. To obtain an STC, an applicant must submit design and engineering data to the FAA, and perform both ground and flight testing. The FAA performs a number of conformity inspections and standards evaluations to determine "continuing airworthiness" of the applicant's design change. If the FAA approves the alteration, it issues the STC to the applicant. The STC and its related information – all drawings, data, and specifications – are the property of the STC holder. An airplane owner who wants to make the modification to its aircraft must receive written permission from the STC owner. *See* C.F.R. § 21.120 ("A supplemental type certificate holder who allows a person to use the supplemental type certificate to alter an aircraft, aircraft engine, or propeller must provide that person with written permission acceptable to the FAA.")

STC from the plaintiff pursuant to the terms and conditions in an STC Sales Contract. (Shieman Aff. ¶ 10; ECF No. 46-4.) Most relevant to this case, the STC Sales Contract contains four paragraphs which assign defense and indemnification duties to the parties.

First, the Stevens Indemnity Provision states, in relevant part:

> STEVENS INDEMNITY: Blackhawk shall have no responsibility for, and Stevens hereby waives and releases and agrees to bear the cost of, and indemnify, defend, and hold harmless Blackhawk . . . from and against (I) all claims, costs, expenses or damages of any nature whatsoever (including reasonable attorney fees and court costs) asserted against or incurred by Blackhawk . . . resulting from the use of or in any way related to any work done under the authority of the STC by Stevens (or any other party other than Blackhawk) prior to completion of the transfer and assignment of the STC to Blackhawk pursuant to these terms; and (ii) all claims, costs, expenses or damages asserted by any person or agent, or employee of Stevens in performance of this Agreement, but excluding in the case of (I) or (ii) above, any claims, costs, expenses or damages which are caused by or result from the negligence or the fraudulent or willful misconduct of any of the Blackhawk Indemnitees.

(STC Sales Contract at 4-5.) (emphasis added).  As quoted, the Indemnity Provision includes an exclusion for any "claims, costs, expenses or damages which are caused by or result from the negligence or the fraudulent or willful misconduct" of Blackhawk. *Id*. The paragraph immediately preceding the above-cited paragraph contains identical language outlining the defendant's responsibility to defend and indemnify the plaintiff for work done under authority of the STC, by any entity other than the plaintiff, "after the completion of the transfer of the STC to Blackhawk pursuant to these terms." *Id*.

The preamble to the Limitations of Liability and Indemnity section reads, in relevant part:

> Limitations of Liability and Indemnity Stevens assumes no

3

> responsibility or liability with respect to any installation work performed by Blackhawk or any third party licensed by it after the completion of the transfer of the STC to Blackhawk pursuant to these terms.

*Id*. at 4.

Finally, in describing the plaintiff's obligation to deliver to the defendant a complete list of contact information for all prior customers of the modification covered by the STC, the Sales Contract provides:

> This obligation shall not abrogate or otherwise reduce Stevens' indemnity and other obligations hereunder to Blackhawk with regard to sales under or other use of the STC prior to its transfer and deliver to Blackhawk pursuant to these terms.

*Id*. at 5.

On March 16, 2011, the subject aircraft crashed following a loss of control during takeoff from the Long Beach Airport in Long Beach, California. (NTSB Report.) The pilot and four passengers were killed, and a fifth passenger was seriously injured. Family members of the deceased filed separate wrongful death lawsuits in California (the "California litigation or lawsuits") against a number of defendants, including manufacturers of the airplane's engines, propellers, and component parts. After Blackhawk was added as a defendant in those cases, it made a demand for defense and indemnification to the plaintiff pursuant to the terms of the STC Contract. It is undisputed that the engine modification for the subject aircraft was performed in 1999, and that the plaintiff owned the STC at that time. (Pl. Resp. Req. to Admit No. 13; see also Shieman Aff. ¶ 6.) The evidence reinforces that at no time did Blackhawk ever perform any modifications, repairs, installation, or service on the subject aircraft, either prior to the April 26, 2006 STC Contract or after Blackhawk purchased the STC. (Shieman Aff. ¶ 11.) In response to the

4

defendant's demand for indemnification, the plaintiff filed this declaratory judgment action, seeking to clarify its obligations to defend and indemnify the defendant for any claims asserted in the California litigation. The defendant argues that the plaintiff owes both such duties.

All defendants in the California Cases reached settlement agreements with the plaintiffs, on or about April 14, 2014. The plaintiff settled the claims asserted against it by executing a "Confidential Settlement Agreement and Release of All Claims," and the defendant separately settled the claims asserted against it, per a "Confidential Settlement Agreement and Release of All Claims." These Settlement Agreements required the plaintiff and the defendant each to pay a designated amount to the California plaintiffs in exchange for a full release of all the claims litigated in the California Cases. The Settlement Agreements specifically exempt from their terms the plaintiff's and the defendant's respective claims in this declaratory judgment action.

As part of the settlement process, all parties to the California Cases executed a Stipulation, on or around March 27, 2014, in which the parties sought to have their settlement deemed to be in "good faith," pursuant to Cal. Civil Procedure Code §877.6. On April 8, 2014, Judge Ross M. Klein of the California Superior Court, Los Angeles County, signed an Order finding that the settlements entered among the various parties to the California action were in good faith, based on the parties' Stipulation. (ECF No. 76-4.) Similarly, because the California Cases involved numerous claims by minor survivors of the decedent passengers, Judge Klein approved the minor settlements pursuant to California Probate Code § 3600, after reviewing the terms of those agreements.

## STANDARD OF REVIEW

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654,

6

655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

The issue before the Court is whether the underlying lawsuits, in the California cases, implicated the plaintiff's respective duties to defend in them and indemnify the defendant for its settlement contribution arising out of those cases. To resolve it, the Court must first determine what the plain language of the Stevens Indemnity Provision provides concerning such duties. *See S.C. Dept. of Transp. v. M & T Enters.*, 667 S.E.2d 7, 13 (S.C. Ct. App. 2008). Then, the Court must construe the actual pleadings, in the California Cases, in conjunction with the Indemnity Provision, to decide whether the claims asserted in those actions triggered the plaintiff's duty to defend, or whether the claims fall under the Indemnity Provision's express exclusion relating to claims of direct negligence against Blackhawk. *See City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund* 677 S.E.2d 574, 578 (S.C. 2009). If the Court concludes that the plaintiff did not owe any duty of defense, then the plaintiff has no duty to indemnify. *See Allstate Indem. Co. v. Tilmon*, 2014 U.S. Dist.

LEXIS 37160 at *5 (D.S.C. Mar. 21, 2014). If, however, the plaintiff does owe a duty to defend, then the Court would likely need to hold an evidentiary hearing to decide the allocation of potential liability between the parties. *See Otis Elevator v. Hardin Constr. Co. Group*, 450 S.E.2d 41, 43 (S.C. 1994); *see also Dent v. Beazer Materials & Servs.*, 993 F. Supp. 923, 941 (D.S.C. 1995).

I.     **Provision Interpretation**

The Court agrees with the parties that the Indemnity Provision is plain and absolute. It reads as follows:

> . . .
> excluding in the case of (I) or (ii) above, any claims, costs, expenses or damages which are caused by or result from the negligence or the fraudulent or willful misconduct of any of the Blackhawk Indemnitees.

(STC Sales Contract at 4-5.) By its obvious terms, it does not require the plaintiff to defend and indemnify the defendant as to claims alleging the defendant's own negligence or damages or expenses arising therefrom. The indemnity provision, however, otherwise does require the plaintiff to defend against claims wherein its own negligence or fault is at issue. *Id*. at 5.

Under South Carolina law, indemnity contracts are subject to general contract principles. *See Federal Pacific Electric v. Carolina Prod. Enterprises*, 378 S.E.2d 56, 57 (S.C. Ct. App. 1989). South Carolina follows an objective contract interpretation rule, meaning that if the language is clear and unambiguous, such language determines the force and effect of the instrument. *See Catawba Indian Tribe of South Carolina v. City of Rock Hill, SC*, 501 F.3d 368, 372 (4th Cir. 2007). Courts focus primarily on the intent of

the parties which is determined from the language used in the contract. *Id*. Where, as here, the agreement is unambiguous and clear on its face, the court's only function is to interpret its lawful meaning and the intent of the parties as found within the agreement. *See Miles v. Miles*, 711 S.E.2d 880, 883 (S.C. 2011).

The plaintiff requests this interpretation: "If Blackhawk is sued for its own alleged direct negligence, SAI lacks any duty to defend or indemnify Blackhawk as to those claims." (ECF No. 76 at 13.)

The Court readily agrees. The first portion of the Indemnity Provision states that the plaintiff will defend and indemnify the plaintiff for claims or damages resulting from its own work on, or use of, the airplane prior to its transfer to the defendant. (STC Sales Contract at 5.) The last portion of the provision excludes such duties as to any claims or damages caused by the defendant's own negligence, fraud, or willful misconduct. *Id*. Unfortunately, the Court does not believe that this interpretation leads to the same result as the plaintiff recommends – that the expansive direct negligence alleged against Blackhawk in the underlying actions utterly nullifies its duty to defend in those cases. The defendant was indeed sued for its alleged direct negligence. Those allegations, however, were generalized enough to create a real possibility that Blackhawk was, in fact, being sued for the negligence of Stevens even where the state-court complaints broadly accused Blackhawk of its own independent negligence, directly.

## II.    State Court Complaints

The Complaints in the California lawsuits reasonably implicate the above interpretation of the Indemnity Provision but in a way that the plaintiff has a duty to defend. "[U]nder South Carolina law, '[q]uestions of coverage and the duty of a liability insurance

9

company to defend a claim brought against its insured are determined by the allegations of the [underlying] complaint.'" *Auto Owners Ins. Co. v. Pers. Touch Med Spa*, LLC, 763 F. Supp. 2d 769, 776 (D.S.C.2011) (quoting *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 382 S.C. 535, 677 S.E.2d 574, 578 (S.C.2009)). In South Carolina, the duty to defend is broader than the duty to indemnify. *Ross Dev. Corp. v. Fireman's Fund Ins. Co.*, 809 F. Supp. 2d 449, 457 (D.S.C.2011). "If the underlying complaint creates a *possibility* of coverage under an insurance policy, the insurer is obligated to defend." *City of Hartsville*, 677 S.E.2d at 578 (citing *Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co*, 265 S.E.2d 38 (S.C.1980)) (emphasis added). This District has previously explained, "[T]he duty to defend is triggered where the underlying complaint includes any allegation that raises the possibility of coverage." *Auto-Owners Ins. Co. v. Newsome*, 2013 WL 3148334, at *4 (D.S.C. June 19, 2013). Critically, an insurer whose duty to defend has been triggered by a lawsuit against the insured "is not justified in refusing to defend the entire case." *Town of Duncan v. State Budget & Control Bd.*, 482 S.E.2d 768, 773-74 (S.C.1997); *see also Employers Mut. Liab. Ins. Co. v. Hendrix*, 199 F.2d 53, 59 (4th Cir.1952); *Cincinnati Ins. Co. v. Crossmann Cmtys. of N.C, Inc.*, 2013 WL 1282017, at *11 (D.S.C. Mar.27, 2013) ("South Carolina law requires that a triggered insurer with a duty to defend the policyholder in a suit must defend the policyholder against all claims in that suit, even those claims that are not covered under the policy.").

The six California lawsuits made joint allegations against the plaintiff and defendant, in this case, as STC owners, and allegations of negligent conduct involving various aspects of the STC. (See generally ECF Nos. 44-3, 44-4, 44-5, 44-6, 44-7, 44-8.) Several other defendants were named alleging negligent conduct outside of the STC. *See id.* A

sampling of the generalized and conflated allegations against all the California defendants, include, but are far from limited to, the following: defects existed "when the aircraft left the possession of each of the defendants" (ECF No. 44-4 at 7); defects were the "result of work performed . . . within 18 years of the date of this incident," *id*; the propeller, engine, the system and their component parts were in the same or substantially the same condition on the day of the accident as they were at the time they were designed, manufactured and installed in the accident aircraft (ECF No. 44-6 at 20 ¶¶ 84(a), (b)); defendants failed to warn owner and operators of the engines of prior failures and "prior accidents," *id*. ¶¶ 95(b),(c); defendants supplied inadequate instructions that the minimum controllable airspeed of the aircraft had been altered from the method of computation normally used, *id*. ¶ 84.

Some or all of these allegations, and numerous others like them, are either generically directed at Defendant Blackhawk, as one of the numerous state-court "defendants," or specifically pled against Defendant Blackhawk, under circumstances that create a real possiblity that it was being accused of misconduct prior to the STC contract and, for which, Plaintiff Stevens' negligence or failures is responsible – and, therefore, for which Blackhawk could not possibly be responsible. (See, e.g., id.; ECF Nos. 44-7 at 3-6; 44-8 at 10-13.) In other words, the complaints are so broadly averred as to create a real possibility, indeed a likelihood, that Blackhawk was being asked to account for Stevens' negligence in addition to its own; that it is being sued derivatively. That even a "possibility" that such allegations encompass such conduct is enough. *See City of Hartsville*, 677 S.E.2d at 578.

Stevens' argues that the California complaints allege negligent conduct against

11

Defendant Blackhawk and that this fact alone is a kind of absolute bar. Over and again, the plaintiff argues the language of the complaints, something along these lines: "Because the Berger Complaint alleges that Blackhawk was negligent in its own right, and because the STC Contract does not require SAI to defend and indemnify Blackhawk for Blackhawk's own acts of negligence, SAI is entitled to the entry of summary judgment in its favor." (ECF No. 44-1 at 11 .) But, an "insurer is not excused from defending suits against the policy holder by the joinder in the same suits of causes of action covered by the policy with the other causes of action beyond its scope." *Hendrix*, 199 F.2d at 59. The Complaints are very broadly drawn. And, it is not clear at all from them that the defendant is not being accused of negligence and fault of the plaintiff. The "defendants" in those cases are collectively accused and even where more specifically associated with particularized conduct, the precise nature of their fault and relevant timeframes are never made clear or distinct from other named defendants. (See ECF No. 44-6 ¶¶ 84, 95.) So, it is a kind of strange simplification to the Court to say that because it is not responsible for "Blackhawk's own acts of negligence" that the inquiry is so obviously resolved in the plaintiff's favor. The complaints are far more ambiguous and broad and suggestive of facts and alleged fault overlapping. *See Hendrix*, 199 F.2d 53, 56-57 (4th Cir.1952) (where a lawsuit contains several causes of action, some of which are covered under the policy and some of which are not, an insurer is not justified in refusing to defend the entire suit). As cited above, there are simply too many allegations in the various complaints related to conduct prior to the transfer of the STC, for which the defendant, here, could not possibly be liable.

And, the fact that Blackhawk might indeed be liable for some conduct, technically arising before the transfer in 2006, does not defeat the possibility that the state court

complaints actually or additionally meant to accuse Stevens of such conduct or that other pre-transfer conduct is attributable to Stevens, even where some is also attributable to Blackhawk. The parties have spent much energy attempting to read, or defeat a reading of, the Indemnity Provision to create some hard line at the point of transfer. It does not, but need not, to still tweak the plaintiff's duty to defend.

The plaintiff resorts to parol evidence related to the drafting of the Indemnity Provision that suggests the exclusion was altered from Blackhawk's "sole negligence" to simply "negligence" such that the scope of the exclusive force was expanded. But, the exclusion is not ambiguous and no resort to this evidence can be made. There is no reason to read the exclusion as permitting allegations of Blackhawk's negligence to somehow negate a duty to defend those portions of the lawsuit that rightly imply Blackhawk's possible liability for *Stevens'* negligence. *See id.* It would not be a plain reading, respectfully. The Court has reread the plaintiff's view repeatedly to understand better. It does not seem defensibly following from the contract's terms.

The plaintiff also would emphasize types of indemnification provisions, used in other cases, which more clearly contemplate a kind of apportionment in indemnity, as context for the failure of the Indemnity Provision, at issue in this case, to so include one. And, while these provisions are extra clear they do not tend to persuade the undersigned that the present one is not at least plainly so – clear. The Court simply disagrees that some additional "to the extent of" language (ECF No. 76 at 1) was necessary to make the Indemnity Provision more operational in this respect. The Indemnity Provision here plainly implies apportionment (with respect to indemnity). The Court would have to force the reading to conclude otherwise.

The plaintiff smears, some, its objection to any apportionment theory as between the duties to defend and indemnify. It would like to say that because apportionment cannot be determined from the face of the Complaint, the duty to defend is somehow defeated or rendered unknowable, in a sense. But, as discussed, if any portion of the Complaint concerns potential negligence of Stevens, for which Blackhawk might possibly account, the duty to defend is implicated. *See Hendrix*, 199 F.2d at 59. In other words, the duty to defend is *not apportioned* in the sense that where the duty exists, it is as to the whole case. But, once that duty is implicated, the fact finder then may look beyond the Complaint to determine liability. *See Otis Elevator v. Hardin Constr. Co. Group*, 450 S.E.2d 41, 43 (S.C. 1994) (stating that duty to indemnify is determined based on the facts and evidence and facts found by the factfinder). So apportionment of liability, although not simple to determine as will be discussed, is not dependent on the allegations of the Complaint. But, the duty to defend can exist, even where the complaint is a kind of mixed bag.

Stevens cannot escape its broad duty to defend because of the typical inability of the underlying state-court plaintiffs to be any more specific in their allegations than knowledge permits at that early a stage. That the California plaintiffs were limited by their limited information and the ethics of initial pleading to generalize and conflate conduct, does not spare Stevens its obligations in defense, when the averments are broad enough to almost certainly implicate it. Doubt should be resolved "in favor of the insured." *Hendrix*, 199 F.2d at 57.

### III.    Duty to Indemnify

Having decided that the plaintiff had a duty to defend, the issue remains as to how much, if any, the plaintiff much indemnify of the amount paid in settlement by the

defendant. "An insurer's duty to defend is separate from its obligation to pay a judgment rendered against an insured." *Ross Dev. Corp. v. Fireman's Fund Ins. Co.*, 809 F. Supp. 2d 449, 457 (D.S.C. 2011) (citing *S.C. Med. Malpractice Liab. Ins. v. Ferry*, 354 S.E.2d 378, 380 (S.C.1987). Under South Carolina law, a liability insurer's duty to indemnify is determined by the findings of the fact finder in the underlying case. *See Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001) (citing *Jourdan v. Boggs/Vaughn Contracting, Inc.*, 476 S.E.2d 708, 711 (S.C. Ct. App.1996)). In other words, "[t]here is no obligation to defend until an action is brought and no obligation to indemnify until a judgment against the insured is obtained." *See Howard v. Allen*, 254 S.C. 455, 176 S.E.2d 127, 129 (S.C.1970).

Importantly, settlement does "not preclude indemnification when there is sufficient evidence to support a finding of fault on the part of the indemnitor and lack of fault by the indemnitee." *Walterboro Cmty. Hosp. v. Meacher*, 709 S.E.2d 71, 75 (Ct. App. 2011); *Otis Elevator*, 450 S.E.2d 41; *Griffin v. Van Norman*, 397 S.E.2d 378 (S.C. Ct. App.1990). But, unlike *Otis Elevator* and *Griffin*, there has been no underlying fact finding made related to the California lawsuits. Those decisions involved procedural novelties that created underlying fact-finding, even where a settlement was also later reached.

The defendant has offered the terms of the settlement agreement and the affidavit of plaintiffs' counsel in the California case to establish a kind of proration of the causes of action, as between Stevens and Blackhawk, so as to establish an appropriation of liability between the two. The plaintiff objects to the admissibility and permissibility of this affidavit on a number of grounds and to the methodology in general. The Court need not decide it and would deny the motion to strike at this time (ECF No. 83). The indemnity obligations

certainly cannot be decided on the affidavit, even if the Court credited it. The plaintiff has had no opportunity to take any discovery on the liability apportionment issue and should, in the least, be entitled to some before the Court proceeds.

Truthfully, the Court is not even sure the exact procedure going forward. An indemnity hearing is likely required, *see Meacher*, 709 S.E.2d at 76, and maybe the indemnity issue must be tried to jury. It is a weird result that this Court would essentially be asked to consider the merits of the settled case, in some form or another, but it is the mechanism, at least in certain circumstances. *See Meacher*, 709 S.E.2d at 76. The Fourth Circuit Court of Appeals has said:

> We do not mean to hold that in every suit against an insurance company to collect an amount paid by the insured in compromise of a claim covered by the policy, it is the duty of the trial court *to try the original action on its merits* and make a determination of the amount of the damages suffered by the injured party. . . . but we hold that in every case of settlement before judgment the reasonableness of the compromise is a proper subject of inquiry *which cannot be answered without some examination into the merits of the claim*.

*Hendrix*, 199 F.2d at 59-60.

The Court will wait to map a course until the close of discovery, but, in the least, there should be an evidentiary hearing to see if the parties can even amass the kind of basis upon which a finder of fact should be permitted to decide it. The Court will, of course, invite suggestions from the parties as to process. This may be common place.

## **CONCLUSION**

For the foregoing reasons, the plaintiff's motion for summary judgment is DENIED (ECF No. 44), the defendant's cross motion for summary judgment is GRANTED in part and DENIED in part (ECF No. 46). Specifically, the defendant's motion is granted with respect to whether or not the plaintiff owes a duty to defend in the underlying state-court cases; it does. The motion is denied with respect to whether the plaintiff must indemnify the defendant; issues of material fact remain. The plaintiff's motion to strike (ECF No. 83) is DENIED. The parties shall have an initial ninety (90) days from the date of this Order to conduct discovery related to the indemnity issues in this matter. The Court plans to keep this case on a fairly restrictive schedule and would ask the parties to participate diligently to finish discovery and otherwise apprise the Court of progress.

IT IS SO ORDERED.

s/ Bruce Howe Hendricks
United States District Judge

Greenville, South Carolina
March 31, 2015

17